UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

THOMAS MOORE,

                    Petitioner,                         Case No. 2:23-cv-131

v.                                                      Honorable Maarten Vermaat

JEFF HOWARD,

                    Respondent.

_____/

**<u>OPINION</u>**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Pursuant

to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Petitioner consented to

proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (Pet.,

ECF No. 1, PageID.25.) Section 636(c) provides that "[u]pon the consent of the parties, a full-time

United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil

matter and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c).

This case is presently before the Court for preliminary review pursuant to 28 U.S.C. § 2253

and Rule 4 of the Rules Governing § 2254 Cases. The Court is required to conduct this initial

review prior to the service of the petition. Rule 4, Rules Governing § 2254 Cases.

Service of the petition on the respondent is of particular significance in defining a putative

respondent's relationship to the proceedings. "An individual or entity named as a defendant is not

obliged to engage in litigation unless notified of the action, and brought under a court's authority,

by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999).

"Service of process, under longstanding tradition in our system of justice, is fundamental to any

procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351.

Rule 4, by requiring courts to review and even resolve the petition before service, creates a circumstance where there may only be one party to the proceeding—the petitioner. Because Respondent has not yet been served, the undersigned concludes that Respondent is not presently a party whose consent is required to permit the undersigned to conduct a preliminary review of the petition. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1] Petitioner's consent is sufficient to permit the undersigned to conduct the Rule 4 review.

The Court conducts a preliminary review of the petition under Rule 4 to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134,

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

141 (6th Cir. 1970) (discussing that a district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

## I.     Factual Allegations and Procedural Background

Petitioner Thomas Moore is incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility in Baraga, Michigan. On August 8, 2019, following a four-day bench trial in the Wayne County Circuit Court, Petitioner was convicted in two separate criminal proceedings that were consolidated for trial. In Wayne County Circuit Court Case No. 19-003135-01-FC (herein the "April 2019 incident case"), Petitioner was convicted of assault with intent to do great bodily harm (AGBH), in violation of Mich. Comp. Laws § 750.84, and unlawful imprisonment, in violation of Mich. Comp. Laws § 750.349b. On September 6, 2019, Petitioner was sentenced to concurrent prison terms of 5 to 10 years for the assault conviction and 5 to 15 years for the unlawful imprisonment conviction.

In Wayne County Circuit Court Case No. 19-003535-01-FC (herein the "January 2019 incident case"), Petitioner was convicted of two counts of assault with intent to commit murder (AWIM), in violation of Mich. Comp. Laws § 750.83, one count of witness intimidation, in violation of Mich. Comp. Laws § 750.122(7)(c), one count of carry a concealed weapon (CCW), in violation of Mich. Comp. Laws § 750.227, one count of felon in possession of a firearm and one count of felon in possession of ammunition, in violation of Mich. Comp. Laws § 750.224f, and two counts of use of a firearm during the commission of a felony (felony-firearm), in violation

of Mich. Comp. Laws § 750.227b. On September 6, 2019, the court sentenced Petitioner as a fourth habitual offender, Mich. Comp. Laws § 769.12, to concurrent sentences of 33 to 60 years for AWIM, 1 to 15 years for witness intimidation, 1 to 5 years for CCW, and 1 to 4 years for each felon-in-possession offense. Those concurrent sentences, in turn, were to be served consecutively to concurrent sentences of 2 years for the felony-firearm offenses. The consecutive string from the January 2019 incident case was to be served concurrently with the sentences from the April 2019 incident case.

Based on Petitioner's sentences in the two cases, the MDOC lists Petitioner's "earliest release date"—the date he is first eligible for parole—as September 5, 2054, and his maximum release date—the date he will complete his maximum term of imprisonment—as September 5, 2081. *See* MDOC Offender Tracking Information System, https://mdocweb.state.mi.us/ otis2/otis2profile.aspx?mdocNumber=174138 (last visited Oct. 15, 2023).

The Michigan Court of Appeals described the facts underlying Petitioner's convictions relating to the January 2019 incident case as follows:

> Defendant's convictions in LC No. 19-003535-01-FC arise from the January 7, 2019 shooting assaults of Barbara Peruski and Adrian Cotton while they were sitting in a van in the parking lot of Peruski's apartment building in Detroit. Cotton became involved in a verbal confrontation with a man walking in front of the van. The man began to walk away, but then turned around and fired multiple shots at the van. Cotton was struck in the forehead. Peruski, who was not struck by the gunfire, identified defendant, whom she knew, as the shooter.

*People v. Moore*, Nos. 350955, 350957, 2022 WL 17542740, at \*1 (Mich. Ct. App. Dec. 8, 2022). The court described the facts underlying Petitioner's convictions relating to the April 2019 incident case as follows:

> Before defendant was charged in the January 2019 shooting, the police were called to investigate a second incident involving defendant and Peruski, which led to the charges in LC No. 19-003135-01-FC. After Peruski appeared before a grand jury in relation to the January 2019 shooting, she left her neighborhood for her safety, but later returned for a visit. Peruski, accompanied by Jennifer Foster and

Christopher Crawford, returned to her former neighborhood to pick up some belongings during the early morning hours of April 6, 2019. After Peruski exited her vehicle to cross the street, she heard defendant call out her name. Peruski ran off and Foster followed her, but defendant caught up to Peruski and began physically assaulting her. Foster tried to assist Peruski, but defendant hit her in the face, knocking her into some bushes. Crawford also tried to help and defendant stabbed him three times with a box cutter. Defendant then took Peruski by her arm to some apartments, where he held her in a courtyard area and told her that she had only one hour for Pam Edens to arrive to save her life. Defendant told Peruski that she owed Edens $50, which Peruski denied. While defendant continued to argue and fight with Peruski, a man appeared on a balcony and told him to stop. Defendant then dragged Peruski into an apartment and began to count down how much longer she had to live before he was going to kill her. The man from the balcony, referred to as "Slim," came to the apartment while armed with a gun and escorted Peruski away to the safety of another apartment. In the meantime, Foster had called the police and Peruski eventually left the building to talk to the police. Defendant was arrested approximately an hour after the police initially responded, after the police obtained information about his whereabouts from his cell phone service provider.

*Id.*[2]

Petitioner, with the assistance of counsel, appealed his convictions to the Michigan Court of Appeals, raising six issues—the same issues he raises in his habeas petition. (Pet., ECF No. 1, PageID.4–6, 11–22.) By opinion issued December 8, 2022, the court of appeals rejected Petitioner's challenges and affirmed the trial court.

Petitioner then filed a *pro per* application for leave to appeal to the Michigan Supreme Court, but he raised only three of the issues that he had raised in the court of appeals.[3] (*Id.*, PageID.6–7.) The Michigan Supreme Court denied leave by order entered May 2, 2023. *People v. Moore*, 988 N.W.2d 771 (Mich. 2023). Petitioner did not file a petition for certiorari in the United

---

[2] "The facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)." *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016) (footnote omitted).

[3] The issues Petitioner raised in the Michigan Supreme Court are the issues he raises in this Court as habeas grounds I, III, and IV. *Compare* (Pet., ECF No. 1, PageID.6–7 (Pet'r's Michigan Supreme Court issues)), *with* (Pet., ECF No. 1, PageID.11–22 (Pet'r's habeas grounds)); *see also* (Pet'r's Mich. Supreme Court Appl. for Leave to Appeal, ECF No. 1-1, PageID.137–145).

States Supreme Court. (Pet., ECF No. 1, PageID.3.) Instead, he filed the instant petition raising six

grounds for relief as follows:

I.     The cumulative effect of individual errors may be so prejudicial as to deny defendant a fair trial. The cumulative effect of errors in Mr. Moore's case in the failure to investigate key aspects denied him due process which included trial counsel's ineffectiveness.

II.    A trial court may join offenses charged in two or more informations against a single defendant when appropriate to promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each offense. The trial court erred by consolidating unrelated charges against Mr. Moore when the allegations were from entirely separate dates, substantially different complainants and facts, and the combined charges denied Moore a fair determination of his case.

III.   A defendant is entitled to due process and a fair trial and, in furtherance of these rights, the prosecutor is required to attach to the filed information a list of all witnesses it knows who might be called at trial and all *res gestae* witness it knows who might be called at trial and all *res gestae* witnesses known to the prosecuting attorney or investigating law enforcement officers. Mr. Moore should be granted a new trial on the neglect of the police/prosecutor's office in purs[u]ing witnesses.

IV.    A grand jury indictment may be amended only by resubmission to the grand jury unless a change is merely a matter of form. The amendment of the grand jury indictment, changing the underlying charge for felony[-]firearm, was improper because it was a substantive change, which should result in vacating the convictions for the two felony-firearms charges in [the January incident case].

V.     An individual maintains a legitimate expectation of privacy, for Fourth Amendment purposes, in the records of his cell phone data, including his physical movements as captured through cell site location information. Mr. Moore was denied the effective assistance of counsel when trial counsel failed to file a motion to suppress based on Fourth Amendment protections when his cell phone data was obtained without a warrant.

VI.    Trial counsel is ineffective when providing deficient performance prejudicial to the defense and is ineffective when failing to make an adequate investigation if it undermines confidence in the trial's outcome. Mr. Moore was denied the effective assistance of counsel when trial counsel rendered deficient performance prejudicial to the defense and when counsel

failed to make an adequate investigation, undermining confidence in the trial's outcome, as is seen in a multitude of instances.

(*Id.*, PageID.11–22.)

## II.     Exhaustion and Procedural Default

Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *O'Sullivan*, 526 U.S. at 844, 848; *see also Picard v. Connor*, 404 U.S. 270, 275–77 (1971); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *O'Sullivan*, 526 U.S. at 845; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). The district court can and must raise the exhaustion issue *sua sponte* when it clearly appears that habeas claims have not been presented to the state courts. *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen*, 424 F.2d at 138–39.

Petitioner bears the burden of showing exhaustion. *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). Based on Petitioner's representations in the petition, he has failed to fairly present habeas grounds II, V, and VI to the Michigan Supreme Court and those issues, therefore, are unexhausted. But, as the Sixth Circuit Court of Appeals has recognized:

Exhaustion is a problem only if the state still provides a remedy for the habeas petitioner to pursue, thus providing the state courts an opportunity to correct a constitutionally infirm state court conviction. If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts.

*Rust*, 17 F.3d at 160.

Petitioner's circumstance, therefore, is very similar to the circumstance facing Petitioner

Boerckel as described in *O'Sullivan v. Boerckel*:

> Boerckel's amended federal habeas petition raised three claims that he had pressed before the Appellate Court of Illinois, but that he had not included in his petition for leave to appeal to the Illinois Supreme Court. There is no dispute that this state court remedy-a petition for leave to appeal to the Illinois Supreme Court-is no longer available to Boerckel; the time for filing such a petition has long passed. *See* Ill. Sup.Ct. Rule 315(b).

*O'Sullivan*, 526 U.S. at 848. The Supreme Court there concluded that "Boerckel's failure to

present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has

resulted in a procedural default of those claims." *Id*.

It is similarly too late for Petitioner to apply to the Michigan Supreme Court for leave to

appeal the three issues. Mich. Ct. R. 7.305(C)(2) (requiring the filing of an application for leave to

appeal in a criminal case no later than 56 days after the Michigan Court of Appeals order or opinion

resolving an appeal). Moreover, now that the appeal is complete, there is only one means of

collaterally raising the issues Petitioner failed to raise in the Michigan Supreme Court. Under

Michigan law, the only means of collaterally attacking a criminal judgment after the direct appeal

is complete is by filing a motion for relief from judgment under Michigan Court Rule 6.500 *et.*

*seq. See People v. Watroba*, 483 N.W.2d 441, 442 (Mich. Ct. App. 1992) (stating "Subchapter

6.500 of the Michigan Court Rules establishes the procedures for pursuing postappeal relief from

a criminal conviction. The subchapter is the exclusive means to challenge a conviction in Michigan

once a defendant has exhausted the normal appellate process."). That subchapter of the Michigan

Court Rules, however, does not permit a court to grant relief in every circumstance. For example,

the trial court may not grant relief to the defendant if the motion "alleges grounds for relief which

were decided against the defendant in a prior appeal." Mich. Ct. R. 6.508(D)(2). That is the

situation in Petitioner's case with regard to habeas grounds II, V, and VI. He presented the same issues—word for word—in his direct appeal, and they were decided against him.

The Court concludes, therefore, that Petitioner's failure to timely present issues II, V, and VI in the Michigan Supreme Court has resulted in a procedural default of those claims.[4] The Court cannot consider the claims unless Petitioner establishes cause for his failure to present the issues to the Michigan Supreme Court and resulting prejudice or by showing that the Court's consideration is necessary to avoid a miscarriage of justice. *Bradshaw v. Richey*, 546 U.S. 74, 79 (2005) (citing *Coleman v. Thompson*, 501 U.S. 722, 749–50 (1991)); *see also Theriot v. Vashaw*, 982 F.3d 999, 1003 (6th Cir. 2020) (noting that the court has "the option . . . to excuse a procedural default and review a defaulted claim on the merits if a petitioner demonstrates '(1) cause for the default and actual prejudice, or (2) that the failure to consider the claim will result in a fundamental miscarriage of justice'" (quoting *Williams v. Bagley*, 380 F.3d 932, 966 (6th Cir. 2004))).

To show cause sufficient to excuse a failure to raise claims on direct appeal, Petitioner must point to "some objective factor external to the defense" that prevented him from raising the issue in his first appeal. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see McCleskey v. Zant*, 499 U.S.

---

[4] The Sixth Circuit has explained in a different procedural context that Michigan Court Rule 6.502(D)(2) is a "rule of collateral estoppel that will not procedurally default a federal habeas claim." *Valentin v. Tanner*, No. 23-1207, 2023 WL 5748143, at *4 (6th Cir. Sept. 1, 2023); *see also Peoples v. Lafler*, 734 F.3d 503, 511–12 (6th Cir. 2013); *Stokes v. Scutt*, 527 F. App'x 358, 365 (6th Cir. 2013); *Amos v. Renico*, 683 F.3d 720727 (6th Cir. 2012); *Skinner v. McLemore*, 425 F. App'x 491, 495 (6th Cir. 2011); *Hicks v. Straub*, 377 F.3d 538, 558 n.17 (6th Cir. 2004) *abrogated on other grounds by Guilmette v. Howes*, 624 F.3d 286 (6th Cir. 2010). In those cases, the Sixth Circuit considered whether a trial court's refusal to consider a claim under Mich. Ct. R. 6.508(D)(2) constituted a state procedural default. In the procedural context of Petitioner's case—where the issue is not whether the state has refused to consider a claim because of the petitioner's state procedural default, but whether a remedy is available after the petitioner failed to fairly present an issue to the state courts on direct appeal—the Sixth Circuit has concluded that Rule 6.508(D)(2) renders further remedy in the state courts unavailable such that the procedural default doctrine requires the habeas petitioner to demonstrate cause and prejudice. *See, e.g.*, *Nettles v. Palmer*, No. 17-2322, 2018 WL 2059912, at *1 (6th Cir. Apr. 5, 2018).

467, 497 (1991). A petitioner who fails to demonstrate cause and prejudice cannot have a cognizable claim. *See Gray*, 518 U.S. at 162. Further, where a petitioner fails to show cause, the court need not consider whether he has established prejudice. *See Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982); *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985).

Petitioner has not shown cause for the failure to present his claims to the Michigan Supreme Court. Therefore, prejudice need not be considered. Petitioner also has not demonstrated that manifest injustice would result because he has not made a colorable claim of innocence; he has not shown that any constitutional error "probably" resulted in the conviction of one who was actually innocent. *Schlup v. Delo*, 513 U.S. 298, 322 (1995) (citing *Murray*, 477 U.S. at 495). This requires a showing "that 'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Coleman v. Mitchell*, 244 F.3d 533, 540 (6th Cir. 2001), *superseded in other part by statute as recognized in Stewart v. Winn*, 967 F.3d 534, 540 (6th Cir. 2020), (quoting *Schlup*, 513 U.S. at 329). Given the rarity of such evidence, the allegation of actual innocence has been summarily rejected in virtually every case. *Calderon v. Thompson*, 523 U.S. 538, 559 (1998).

The court must determine whether Petitioner has demonstrated actual innocence by clear and convincing evidence, such that his conviction represents a "fundamental miscarriage of justice." *See Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). Petitioner does not attempt to introduce new evidence. Rather, he merely attempts to relitigate evidence that was available at the time of trial. Thus, any possible claim of actual innocence that Petitioner might raise has no merit and cannot justify excusing a procedural default.

Accordingly, the Court concludes that habeas grounds II, V, and VI are procedurally defaulted. Petitioner's procedural default bars relief on those claims. Nonetheless, the Court will

also, out of an abundance of caution, address them on the merits because Petitioner's habeas ground I (which simply repeats court of appeals issue I and supreme court issue I) makes reference to cumulative errors. It is not impossible that the generic reference to cumulative error might be argued to bring back in the grounds Petitioner otherwise omitted from his Supreme Court presentation.

### III.    AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)); *see Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal

law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d

652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## A.     Joinder (Habeas Ground II)

Petitioner contends that the trial court erred by consolidating unrelated charges against him when the allegations were from entirely separate dates, substantially different complainants and facts, and the combined charges denied Petitioner a fair determination of his case. He states the issue in this Court exactly as he stated the issue in the Michigan Court of Appeals. Petitioner's argument regarding this ground appears in his Michigan Court of Appeals brief, (ECF No. 1-1, PageID.102–106). The argument does not cite any federal cases nor does it include any claim that the joinder of claims violated his constitutional rights. His claim is premised on the trial court's

failure to comply with the Michigan Court Rule regarding joinder. Indeed, his claim is expressly presented as "non-constitutional error." (*Id.*, PageID.103.)

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Petitioner's invitation to assess whether the joinder of his claims complied with state law "is not part of a federal court's habeas review of a state conviction." *Id.* at 67. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id.* at 67–68.

In short, Petitioner's joinder claim is not cognizable on habeas review. Because Petitioner has failed to even argue that the state court's rejection of his joinder claim is contrary to, or an unreasonable application of, clearly established federal law, he is not entitled to habeas relief on that claim.

### B. Obligation to Supply a *Res Gestae* Witness List (Habeas Ground III)

Petitioner next contends that he was denied due process when the prosecutor failed to provide a *res gestae* witness list. The premise of Petitioner's argument regarding these witnesses is that the prosecutor has a duty to produce *res gestae* witnesses. The idea that the prosecutor must produce all witnesses "to the transaction" is a product of the English courts:

> The prosecutor in a criminal case, is not at liberty, like a plaintiff in a civil case, to select out a part of an entire transaction which makes against the defendant, and then, to put the defendant to the proof of the other part, so long as it appears at all probable from the evidence, that there may be any other part of the transaction undisclosed; especially, if it appears to the court that the evidence of the other portion is attainable. The only legitimate object of the prosecution is, "to show the whole transaction, as it was, whether its tendency be to establish guilt or innocence." The prosecuting officer represents the public interest, which can never be promoted by the conviction of the innocent. His object like that of the court, should be simply justice; and he has no right to sacrifice this to any pride of professional success. And however strong may be his belief of the prisoner's guilt,

14

> he must remember that, though unfair means may happen to result in doing justice to the prisoner in the particular case, yet, justice so attained, is unjust and dangerous to the whole community. And, according to the well-established rules of the English courts, all the witnesses present at the transaction, should be called by the prosecution, before the prisoner is put to his defense, if such witnesses be present, or clearly attainable. See *Maher v. The People*, 10 Mich., 225, 226. The English rule goes so far as to require the prosecutor to produce all present at the transaction, though they may be the near relatives of the prisoner. See *Chapman's case*, 8 C. & P., 559; *Orchard's case*, *Id*., note *Roscoe's Cr. Ev*., 164.

*Hurd v. People*, 25 Mich. 405, 416, 1872 WL 3237 (Mich. Oct. 8, 1872). The principle made its way into Michigan statutes by way of a requirement that the indictment—and eventually the information—include a list of witnesses endorsed by the prosecutor. *See People v. Pearson*, 273 N.W.2d 856, 866 (Mich. 1979) ("The rule took legislative form in 1859; the statute now provides: [statutory language]. The relevant language has remained unchanged since first enacted." (footnotes omitted)). It is not so much the statutory language, however, that matters here. Instead, it is the Michigan courts' construction of that language "to require the prosecutor to indorse on the information**, produce in court, and call all known res gestae witnesses**." *Id*. (footnote omitted, emphasis added).

That is the source of Petitioner's claim that the prosecutor must produce all *res gestae* witnesses—not the federal constitution, not federal law—state law. Moreover, in 1986, the Michigan Legislature eliminated the requirement that the prosecutor endorse all *res gestae* witnesses and the requirement that the prosecutor produce all endorsed witnesses. *People v. Koonce*, 648 N.W.2d 153, 156 (Mich. 2002); *People v. Perez*, 670 N.W.2d 655, 657–658 (Mich. 2003). The statutory amendment "replaced the prosecutor's duty to produce *res gestae* witnesses with 'an obligation to provide notice of known witnesses and reasonable assistance to locate witnesses on defendant's request.'" *Perez*, at 657–658.

The *res gestae* witness rule is, or more accurately was, purely a matter of state law. The Sixth Circuit Court of Appeals has repeatedly held that the failure of a Michigan prosecutor to

produce *res gestae* witnesses implicates no federal right. *See Collier v. Lafler*, 419 F. App'x 555, 559 (6th Cir. 2011) ("Michigan's requirement that prosecutors produce *res gestae* witnesses is a matter of state law, and its enforcement is outside the scope of our review. We have rejected on that basis claims raised under this very state requirement."); *Brown v. Burton*, No. 18-2145, 2019 WL 4865932, at *2 (6th Cir. Apr. 9, 2019) ("Brown[] claim[ed] that his Sixth and Fourteenth Amendment rights were violated when the prosecutor failed to produce two witnesses and failed to assist him in locating such witnesses. . . . The district court concluded that Brown's claim alleged a state-law violation, which is not a basis for federal habeas relief. . . . Reasonable jurists would not debate that conclusion."); *Hatten v. Rivard*, No. 17-2520, 2018 WL 3089204, at *3 (6th Cir. May 9, 2018) ("This court has explained, however, that 'Michigan's requirement that prosecutors produce *res gestae* witnesses is a matter of state law, and its enforcement is outside the scope of our review.'" (quoting *Collier*, 419 F. App'x at 559)); *Moreno v. Withrow*, No. 94-1466, 1995 WL 428407, at *1 (6th Cir. Jul. 19, 1995) ("Moreno's claim the prosecutor failed to call a *res gestae* witness, Bennett's sister, concerned a perceived error of state law which rarely serves as a basis for habeas corpus relief and does so only when, under federal constitutional law, the petitioner is denied fundamental fairness in the trial process."); *Smith v. Elo*, No. 98-1977, 1999 WL 1045877, at * 2 (6th Cir. Nov. 8, 1999) ("Smith is not entitled to relief on his claim that the prosecutor failed to call *res gestae* witnesses because issues of state law are not cognizable on federal habeas review . . . ."); *Lewis v. Jabe*, No. 88-1522, 1989 WL 145895, at *3 (6th Cir. Dec. 4, 1989) ("[T]he *res gestae* requirement is a state law question. Claims based on violations of state law are for the state courts to decide."); *Atkins v. Foltz*, No. 87-1341, 1988 WL 87710 (6th Cir. Aug. 24, 1988) ("[F]ederal law does not require production of all *res gestae* witnesses. . . . [A]lthough Michigan law requires the production of all *res gestae* witnesses . . . this court cannot

hear state claims on petition for writ of habeas corpus . . . ."); *see also Grays v. Lafler*, 618 F. Supp. 2d 736, 745 (W.D. Mich. 2008) ("There is no clearly established Supreme Court law recognizing a constitutional right to a *res gestae* witness.").

Habeas petitioners have attempted to "federalize" the claim that the prosecutor failed to produce a *res gestae* witness by contending that the prosecutor violated *Brady v. Maryland*, 373 U.S. 83 (1963), or interfered with the right to compulsory process, or the right to present a defense, or the right to confrontation; but none of those rights are at issue here. Of these possible claims, Petitioner mentions only *Brady*. (Pet'r's Appeal Br., ECF No. 1-1, PageID.108 (arguing that "[i]n a criminal prosecution, the prosecutor has a settled obligation to fully investigate the facts and bring forth all relevant evidence pertaining to the whole transaction" and citing *Brady*, 373 U.S. at 87 ).

Under *Brady*, "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. The Supreme Court has held that "[t]here are three components of a true *Brady* violation: [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). Prejudice (and materiality) is established by showing that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 280 (quoting *Bagley*, 473 U.S. at 682); *see also Cone v. Bell*, 556 U.S. 449, 469–70 (2009). A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682.

However, the *Brady* rule "only applies to evidence that was known to the prosecution, but unknown to the defense, at the time of trial." *Apanovitch v. Houk*, 466 F.3d 460, 474 (6th Cir. 2006). The government's failure to disclose potentially exculpatory evidence does not violate *Brady* "'where the defendant knew or should have known the essential facts that would permit him to take advantage of such information' or where the evidence is available from another source." *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991) (quoting *United States v. Grossman*, 843 F.2d 78, 85 (2d Cir. 1988)). "[W]here the alleged *Brady* evidence is available to the defense, 'there is really nothing for the government to disclose.'" *Abdur'Rahman v. Colson*, 649 F.3d 468, 474 (6th Cir. 2011) (quoting *Bell v. Bell*, 512 F.3d 223, 235 (6th Cir. 2008)) .

The *Brady* evidence withheld here, according to Petitioner, consists of the identities of five witnesses: (1) the "Good Samaritan," (aka Slim); (2) DeeDee; (3) Ken; (4) Posse; and (5) ManMan. (Pet'r's Appeal Br., ECF No. 1-1, PageID.107.) The Michigan Court of Appeals reported—and Petitioner does not contest—that Petitioner's counsel was aware of Slim before trial, knew his identity, and did not want to pursue him as a witness. *People v. Moore*, Nos. 350955, 350957, 2022 WL 17542740, at *5 (Mich. Ct. App. Dec. 8, 2022). Petitioner's knowledge of the identity of Slim before trial forecloses his *Brady* claim that the prosecutor withheld Slim's identity.

The other four witnesses did not "witness" the events that resulted in Petitioner's convictions; they were simply present after Slim escorted Peruski from the apartment where Petitioner held her. *Id.* at *5. Petitioner offers no indication how the four witnesses testimony would be exculpatory. He argues only that they "would have contradicted Peruski . . . ." (Pet'r's Appeal Br., ECF No. 1-1, PageID.112.) He does not explain how. Moreover, Petitioner does not allege that the prosecutor knew the identities of these witnesses—only that the prosecutor should have known. (*Id.*, PageID.110 (stating "[h]ad the police questioned the witnesses and/or taken their

18

names, included the information in the police report, or otherwise notified the prosecutor, and had

the prosecutor notified the defense of these witnesses and their contact information, the defense

could have requested their presence at trial"). Thus, Petitioner has not shown a *Brady* violation as

to the other four witnesses either. Indeed, Petitioner indicates that Peruski did not provide even

their "street" names until the trial.

In short, Petitioner raises only a state law claim that is not cognizable on habeas review.

His half-hearted attempt to federalize the claim by simply mentioning *Brady* falls short. Petitioner

has failed to show that the state court's rejection of the claim is contrary to, or an unreasonable

application of, clearly established federal law; thus, he is not entitled to habeas relief.

## C.     Amendment of the Grand Jury Indictment (Habeas Ground IV)

Petitioner next contends that his felony-firearm convictions in the January 2019 incident

case were improper because the foundational felony underlying the felony-firearm charges was

changed without returning the case to the grand jury for reindictment. The formally filed grand

jury indictment premised the felony-firearm changes on the underlying felony of armed robbery,

and that was changed by amendment to an underlying felony of AWIM. The Michigan Court of

Appeals described the procedural history of the amendment as follows:

> The lower court record contains a handwritten copy of the grand jury's
> indictment, signed by Judge Thomas E. Jackson on May 9, 2019, which states that
> Counts 9 and 10 were felony-firearm charges based on "AWIM," i.e., assault with
> intent to murder. But the formal indictment filed on May 14, 2019, instead listed
> the underlying felony for Counts 9 and 10 as armed robbery, even though defendant
> was not separately charged with armed robbery. On July 31, 2019, the prosecution
> filed an amended indictment to correct this error and clarify that the underlying
> felony for Counts 9 and 10 was AWIM.

> It is apparent that the indictment filed on May 14, 2019, contained a clerical
> error because there was no separate charge of armed robbery. The July 31, 2019
> amendment corrected this error to reflect that the felony-firearm charges in Counts
> 9 and 10 were instead based on the underlying felony of AWIM, which was
> separately charged in the indictment. Because the amendment was made before
> trial, and because defendant had notice that he was separately charged with two

counts of AWIM and the amendment was consistent with the grand jury's original indictment, defendant was not prejudiced by the amendment and there was no need to remand the case to the grand jury for this correction.

*Moore*, 2022 WL 17542740, at *6.

The Due Process Clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him so as to provide him an adequate opportunity to prepare his defense. *See, e.g.*, *In re Ruffalo*, 390 U.S. 544 (1968); *Blake v. Morford*, 563 F.2d 248 (6th Cir. 1977); *Watson v. Jago*, 558 F.2d 330, 338 (6th Cir. 1977). This requires that the offense be described with some precision and certainty so as to apprise the accused of the crime with which he stands charged. *Combs v. State of Tennessee*, 530 F.2d 695, 698 (6th Cir. 1976). Such definiteness and certainty are required as will enable a presumptively innocent man to prepare for trial. *Id.* "Beyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review." *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002) (quoting *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986)). "An indictment which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings." *Mira*, 806 F.2d at 639. In other words, as long as "sufficient notice of the charges is given in some . . . manner" so that the accused may adequately prepare a defense, the Fourteenth Amendment's Due Process Clause is satisfied. *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984); *Watson*, 558 F.2d at 338.

The circumstances described by the state appellate court do not suggest that Petitioner was denied the notice that due process requires. Petitioner does not contend that he did not have notice of the amendment before trial or that the presentation of his defense was hampered in any way. Instead, he argues that the failure to resubmit the case to the grand jury warrants habeas relief. Petitioner does not cite any clearly established federal law to support that claim. Instead he cites *United States v. Huff*, 512 F.2d 66 (5th Cir. 1975) and *United States v. Lang*, 732 F.3d 1246 (11th

20

Cir. 2013). Those federal criminal cases, however, turn not on the Due Process Clause of the

Fourteenth Amendment, but on the Indictment Clause of the Fifth Amendment. That clause does

not apply to the states. *Branzburg v. Hayes*, 408 U.S. 665, 688 n. 25 (1972) (noting that "indictment

by grand jury is not part of the due process of law guaranteed to state criminal defendants by the

Fourteenth Amendment").

Petitioner does not claim that he lacked sufficient notice regarding the felony-firearm

charges to permit him to defend against them; instead he claims that any amendment to the state

indictment had to made by the grand jury. That is not a federal constitutional guarantee that applies

to state criminal prosecutions. Therefore, Petitioner has failed to show that the state court's

rejection of this claim is contrary to, or an unreasonable application of, clearly established federal

law and he is not entitled to habeas relief.

### D.      Ineffective Assistance of Trial Counsel (Habeas Grounds V and VI)

Petitioner next contends that his trial counsel rendered ineffective assistance when she

failed to file a motion to suppress based on Fourth Amendment protections when his cell phone

data was obtained without a warrant and when she failed to conduct an adequate investigation. The

Michigan Court of Appeals applied the following standard when it addressed these claims:

> [A] defendant must demonstrate that counsel's performance fell below an objective
> standard of reasonableness and that there is a reasonable probability that but for
> counsel's errors the result of the proceeding would have been different. *People v.
> Vaughn*, 491 Mich. 642, 669; 821 N.W.2d 288 (2012), citing *Strickland v
> Washington*, 466 U.S. 668; 104 S.Ct. 2052; 80 L.Ed.2d 674 (1984). It is presumed
> that trial counsel was effective, and a defendant must overcome the strong
> presumption that counsel's performance was sound trial strategy. People v
> Trakhtenberg, 493 Mich. 38, 52; 826 N.W.2d 136 (2012). Defense counsel will not
> be deemed ineffective for failing to raise a meritless or futile objection. *See People
> v. Muhammad*, 326 Mich.App. 40, 58 n 7; 931 N.W.2d 20 (2018). The burden of
> establishing the factual predicate for a claim of ineffective assistance of counsel is
> on the defendant. *People v. Hoag*, 460 Mich. 1, 6; 594 N.W.2d 57 (1999); *People
> v. Anderson*, 322 Mich.App. 622, 628; 912 N.W.2d 607 (2018).

*Moore*, 2022 WL 17542740, at *7. The state appellate court expressly relied on the clearly established federal law of *Strickland* to resolve Petitioner's ineffective assistance claims.

The state court's application of the correct standard eliminates the possibility that the resulting decision is "contrary to" clearly established federal law. As the Supreme Court stated in *Williams v. Taylor*:

> The word "contrary" is commonly understood to mean "diametrically different," "opposite in character or nature," or "mutually opposed." Webster's Third New International Dictionary 495 (1976). The text of § 2254(d)(1) therefore suggests that the state court's decision must be substantially different from the relevant precedent of this Court. The Fourth Circuit's interpretation of the "contrary to" clause accurately reflects this textual meaning. A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.

*Williams*, 529 U.S. at 405. The Court went on to offer, as an example of something that is not "contrary to" clearly established federal law, the following:

> [A] run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s "contrary to" clause. Assume, for example, that a state-court decision on a prisoner's ineffective-assistance claim correctly identifies *Strickland* as the controlling legal authority and, applying that framework, rejects the prisoner's claim. Quite clearly, the state-court decision would be in accord with our decision in *Strickland* as to the legal prerequisites for establishing an ineffective-assistance claim, even assuming the federal court considering the prisoner's habeas application might reach a different result applying the *Strickland* framework itself. It is difficult, however, to describe such a run-of-the-mill state-court decision as "diametrically different" from, "opposite in character or nature" from, or "mutually opposed" to *Strickland*, our clearly established precedent. Although the state-court decision may be contrary to the federal court's conception of how *Strickland* ought to be applied in that particular case, the decision is not "mutually opposed" to *Strickland* itself.

*Id.* at 406. Therefore, because the Michigan Court of Appeals applied the correct standard—*Strickland*—Petitioner can only overcome the deference afforded state court decisions if the determination of Petitioner's sufficiency is an unreasonable application of *Strickland* or if the state court's resolution was based on an unreasonable determination of the facts. 28 U.S.C. 2254(d).

### 1.      Failure to File a Motion to Suppress

Typically, Fourth Amendment search and seizure issues are not cognizable on habeas review under *Stone v. Powell*, 428 U.S. 465 (1976). In *Stone v. Powell*, the Supreme Court held that federal habeas review is not available to a state prisoner alleging that his conviction rests on evidence obtained through an unconstitutional search or seizure, as long as the state has given the petitioner a full and fair opportunity to litigate the Fourth Amendment claim. *Id.*; *see also Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012).

For the rule of *Stone v. Powell* to apply, the state must have provided, in the abstract, a mechanism by which to raise the Fourth Amendment claim, and the presentation of the claim in the case before the court must not have been frustrated by failure of that mechanism. *See Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985). If these two inquiries are satisfied, federal habeas review of the Fourth Amendment claim is precluded, even if the federal court deems the state-court determination of the claim to have been in error. *Id.* at 824. It is beyond dispute that Michigan has a state procedural mechanism that presents a defendant a full opportunity to raise a Fourth Amendment claim before trial. And Petitioner has not alleged any facts showing that the state's mechanism had broken down. Therefore, without something more, *Stone v. Powell* would bar the Court's consideration of the merits of Petitioner's Fourth Amendment claim.

But there is "something more" to Petitioner's Fourth Amendment claim. Petitioner argues that his counsel rendered ineffective assistance by failing to move to suppress the cell phone location information that was "seized" without a warrant. In *Kimmelman v. Morrison*, 477 U.S. 365 (1986), the Supreme Court stated: "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that he verdict would have been different absent the excludable evidence in order to

demonstrate actual prejudice." *Id.* at 375, *quoted in Richardson v. Palmer*, 941 F.3d 838, 857, (6th Cir. 2019). Thus, Petitioner's ineffective assistance claim requires consideration of the merits of Petitioner's Fourth Amendment claims and, to the extent that Petitioner's Fourth Amendment claim lacks merit, his ineffective assistance claim necessarily fails.

The Michigan Court of Appeals resolved the Fourth Amendment aspect of Petitioner's ineffective assistance claim as follows:

In *United States v Carpenter*, [585] U.S. ——; 138 S.Ct. 2206, 2217, 2220; 201 L.Ed.2d 507, 521, 525 (2018), the Court held that individuals retain a legitimate expectation of privacy for historical cell-site location information (CSLI), entitling them to protection of records of their physical movements through the use of cellular data, even though that data is collected by third parties. In order to obtain that information, the Fourth Amendment requires that the police first obtain a search warrant. *Id.* at ——; 138 S.Ct. at 2220–2221. However, the Court also discussed exceptions to the warrant requirement, including the need to locate a fleeing suspect, protect individuals threatened with imminent harm, or to preclude the imminent destruction of evidence. *Id.* at ——; 138 S.Ct. at 2222–2223. The Court further explained that its decision was "a narrow one" and that expressed no view on real-time CSLI. *Id.* at ——; 138 S.Ct. 2220.

The record supports that there were exigent circumstances to allow the police to obtain the cell phone data without a warrant. Defendant previously shot at Peruski and Cotton. Months later, defendant committed an assault upon Peruski, assaulted Foster when she tried to intervene, and stabbed Crawford with a boxcutter when he tried to intercede. Foster saw defendant take Peruski to a common area, but he moved Peruski into an unknown apartment. Thus, when police initially arrived at the apartment complex, they were aware of the escalating assaults that defendant committed but unaware of his location with Peruski. Peruski was able to flee from defendant with the assistance of Slim who pointed a gun at defendant. Because defendant was known to frequent the location, the police were unaware if defendant had fled the scene or if he intended to return with a gun.

And given defendant's assaults on Peruski, Foster, and Crawford, the police had probable cause to arrest defendant without a warrant. M.C.L. 764.15(1)(a)-(d), and (f). See also *People v Hammerlund*, 504 Mich. 442, 453 n. 5; 939 N.W.2d 129 (2019) ("Probable cause to arrest exists where the facts and circumstances known to the officer would warrant a person of reasonable caution to believe that the offense was committed by the suspect."); see also *People v Coward*, 111 Mich.App. 55, 61; 315 N.W.2d 144 (1981) (A police bulletin advising officers of the commission of a felony coupled with the perpetrator's description can provide probable cause for a warrantless arrest of the person matching the perpetrator's description found along a possible escape route shortly after the crime.).

*Moore*, 2022 WL 17542740, at *8.

Petitioner apparently does not disagree that *Carpenter* permits warrantless acquisition of CSLI data when exigent circumstances exist. (Pet'r's Appeal Br., ECF No. 1-1, PageID.117 (stating that "[s]imply calling something an exigent circumstance is not proof that something is exigent").) But the court of appeals did not simply call the circumstances exigent, the court explained the nature of the exigency. Petitioner does not challenge the court of appeals' explanation. He does not contend that the appellate court's recounting of the facts regarding exigency are unreasonable. Instead he claims that the allegations of Peruski—which, with Foster's reports regarding Petitioner's assaults, form the very foundation for the determination of exigency—are "wild . . . unverified and unreliable." (*Id*., PageID.118.) Petitioner's claims regarding Peruski's credibility, claims based on inconsistencies in Peruski's statements over time, not the inherent fantastic nature of her statements in the moment during April of 2019, do not change the fact that Peruski's and Foster's reports to the police evidence an "ongoing emergency" that, under *Carpenter*, 138 S. Ct. at 2223, would permit police warrantless access to CSLI.

Because Petitioner's underlying Fourth Amendment claim lacks merit, his ineffective assistance claim premised upon counsel's failure to move to suppress the CSLI evidence and subsequent arrest necessarily fails. Petitioner cannot show that the Michigan Court of Appeals' rejection of this ineffective assistance claim is contrary to, or an unreasonable application of, *Strickland* or *Carpenter*; therefore, he is not entitled to habeas relief.

### 2.      Failure to Investigate

Petitioner also contends that his counsel rendered ineffective assistance because she failed to conduct an adequate investigation; he "maintains that a thorough and complete investigation would exonerate him." (Pet'r's Appeal Br., ECF No. 1-1, PageID.120–121.) According to Petitioner, counsel's investigation fell short because she failed to have the box cutter tested for

victim Crawford's DNA[5] and failed to interview witnesses, both of which "would have shown the court [Petitioner] was not involved." (*Id.*, PageID.123.)[6]

It is well established that "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. The duty to investigate derives from counsel's basic function, which is "'to make the adversarial testing process work in the particular case.'" *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986) (quoting *Strickland,* 466 U.S. at 690). This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691.

A court "cannot conclude that [] counsel was deficient solely on [the petitioner's] version." *See Fitchett v. Perry*, 644 F. App'x 485, 489 (6th Cir. 2016) (holding that "sheer speculation" of inadequate investigation does not state a claim). "It should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013) (quoting *Strickland*, 466 U.S. at 689). Absent evidence of what the investigation would have revealed or what additional witnesses might have said, "*Strickland*'s deferential standard and AEDPA's

---

[5] The box cutter was "found in [Petitioner's] possession." *Moore*, 2022 WL 17542740, at *9; *see also* (Pet'r's Brief in Support of Mot. for New Trial, ECF No. 1-1, PageID.40 (stating "[Petitioner] was arrested some blocks away from the crime scene with a box cutter in his possession").)

[6] Petitioner additionally notes that counsel failed to obtain cell phone records that would have also shown that he was not involved. He does not explain that claim. It appears that the claim may be a bit of sophistry. Apparently one of the police reports suggested that a call to Edens was made from "a phone of the perpetrator." (Pet'r's Suppl. Br. in Support of Mot. for New Trial, ECF No. 1-1, PageID.56.) Because Petitioner is apparently confident that call did not come from his phone, he claims the phone records will prove he is not the perpetrator. (*Id.*)

doubly deferential standard require a finding that counsel's performance was not deficient." *Fitchett v. Perry*, 644 F. App'x 485, 489 (6th Cir. 2016); *see also Carter v. Mitchell*, 443 F.3d 517, 531 (6th Cir. 2006) (finding that the petitioner "provided no basis for a finding that trial counsel's investigation was unreasonable" where he did not introduce "any statement from trial counsel describing what [counsel] did or did not do in investigating [the petitioner's] background"); *Beuke v. Houk*, 537 F.3d 618, 644 (6th Cir. 2008) (rejecting ineffective-assistance claim on habeas review where petitioner "ask[ed] this court to assume," based on "sheer speculation," that his trial counsel did not perform an adequate mitigation investigation and where petitioner failed to provide "enough evidence to confirm or deny that conclusion").

Petitioner's claims regarding counsel's investigation were reviewed by the trial court in the opinion denying Petitioner's motion for a new trial. "An evidentiary hearing was held on July 30, 2021[; t]wo witnesses – defendant's trial counsel and defendant himself testified at the hearing." (Wayne Cnty. Cir. Ct. Op. & Order, ECF No. 1-1, PageID.70.) The trial court reviewed counsel's testimony with regard to the box cutter and each witness. (*Id*., PageID.71–75.) Counsel revealed that Petitioner specifically asked counsel to not seek DNA testing of the box cutter; counsel complied. (*Id*., PageID.71–72.) Counsel revealed that she had declined to call witness Edens because, according to her investigator, Edens's testimony would not have favorable and Petitioner did not disagree with that decision. (*Id*., PageID.72.) Similarly, counsel did not call Slim because her investigator advised that the testimony would be detrimental; Petitioner also indicated that counsel should not subpoena Slim. (*Id*., PageID.73.) With regard to the remaining "missing" witnesses—Brick, Dee Dee, Ken, Posse, and ManMan—counsel noted that Petitioner never told her about them and the first time their names ever came up was at trial. (*Id*., PageID.73–75.)

27

Counsel also explained her strategic reasons to not test the box cutter or call these witnesses. She was attacking the depth of the police investigation into Peruski's claims. Petitioner had more to gain by pointing out the failure of the police and prosecutor to present inculpatory evidence from these sources than by having the defense uncover such inculpatory evidence. (*Id.*, PageID.76.) The trial court found the following:

> Defendant has presented no evidence establishing that defense counsel's strategic choice to focus on a particular defense/strategy was error simply because it was chosen. On the testimonial record established there is no evidence that DNA testing of the box cutter would have been exculpatory and there is no evidence that calling any of the aforementioned witnesses would have resulted in favorable testimony. Here, this Court does not agree that counsel performed deficiently. Assuming for argument that counsel had been deficient, the defense has not proven prejudice.

(*Id.*, PageID.76–77.)

Despite counsel's testimony regarding the investigation conducted or the reasons for not pursuing a deeper investigation, when Petitioner presented this issue to the Michigan Court of Appeals, he simply ignored the trial court record and, once again without any evidentiary support, vaguely suggested the testimony or test results that were not pursued would have been exculpatory. Petitioner's argument fared no better before the appellate court:

> [Defendant] argues that counsel was ineffective for not calling Edens and others as witnesses at trial, and for not requesting that a box cutter found in defendant's possession be tested for DNA.

> As to Edens, defendant must overcome the presumption that counsel's decision not to call Edens was sound trial strategy. *People v Smith*, 336 Mich.App. 79, 102–103; 969 N.W.2d 548 (2021). As discussed earlier, Edens was uncooperative, but a defense investigator was able to speak to her and he determined that any testimony she could offer would not be helpful to defendant. Moreover, defendant never told counsel that Edens's testimony would be favorable. Because the record indicates that defense counsel investigated this individual and reasonably declined to call her as a witness after learning that her testimony would not be helpful to defendant's case, this ineffective-assistance claim cannot succeed.

> Defendant also asserts that other unspecified witnesses should have been called, but because he does not identify the other witnesses he believes should have been called or provide the substance of any testimony they could have offered, he

28

has not established the factual predicate for this claim. See *Hoag*, 460 Mich. at 6. Therefore, this claim also cannot succeed.

Turning to the allegation that defense counsel was ineffective for not requesting DNA testing of the box cutter found in defendant's possession, defense counsel explained at the evidentiary hearing that she did not request DNA testing of the box cutter because, after discussing the myriad possibilities of testing with defendant, defendant asked her not to request that testing. Furthermore, counsel also believed that a negative test would not have been particularly helpful for the defense because of the one-hour gap between defendant's alleged assault of the victims and his arrest. On the other hand, if testing showed that DNA from one of the victims was on the box cutter, it would have been "devastating" to defendant's case. Counsel agreed that the possibility of a negative DNA test was outweighed by the potentially devastating risk of a positive DNA test.

Thus, the record shows that defense counsel considered the possibility of requesting DNA testing of the box cutter, but after discussing the matter with defendant, reasonably decided against doing so because (1) defendant told counsel not to pursue testing of that evidence, and (2) counsel reasonably believed that any benefit from testing was outweighed by the potentially devastating risk of a positive DNA test. Defendant has not overcome the presumption that counsel's decision not to pursue DNA testing of the box cutter was sound trial strategy.

Moore, 2022 WL 17542740, at *8–9.

Petitioner presents nothing to suggest that the findings of the trial court or the appellate court are unreasonable. Those findings "are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)." *Shimel*, 838 F.3d at 688. Petitioner has not overcome that presumption; he simply proceeds as if those findings do not exist and offers only a prediction that the unknown testimony or evidence would have been favorable. "A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnote omitted); *see also Pillette v. Berghuis*, 408 F. App'x 873, 887 (6th Cir. 2010) ("The salient point is that nobody knows what [the putative witness] would have said. Speculation cannot suffice to establish the requisite prejudice.").

Similarly, Petitioner has failed to identify any shortcoming in the state courts' applications of *Strickland*. The courts relied on the *Strickland* standard and applied it appropriately, determining that counsel's performance was not deficient and, even if it fell short, Petitioner identified no resulting prejudice. Even if this Court disagreed with the state courts' assessments—and the Court does not disagree—Petitioner cannot prevail on this ineffective assistance claim because the state courts' assessments are not unreasonable.

### E.      Cumulative Error (Habeas Ground I)

Finally, Petitioner argues that the cumulative effect of all the errors he has identified have resulted in sufficient prejudice to render his trial fundamentally unfair. The Michigan Court of Appeals rejected this claim, reasoning as follows:

> "The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal, but the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted." *People v. Gaines*, 306 Mich. App. 289, 321–322; 856 N.W.2d 222 (2014). "In making this determination, only actual errors are aggregated to determine their cumulative effect." *People v. Bahoda*, 448 Mich. 261, 292 n. 64; 531 N.W.2d 659 (1995). Consequently, "individual claims of error either have merit or they do not." *LeBlanc*, 465 Mich. at 591 n. 12. Having considered and rejected defendant's claims of error, defendant is not entitled to relief on this basis. *People v. Dobek*, 274 Mich. App. 58, 106; 732 N.W.2d 546 (2007) ("Absent the establishment of errors, there can be no cumulative effect of errors meriting reversal.").

Moore, 2022 WL 17542740, at *9.

Petitioner has not shown how this determination runs afoul of clearly established federal law—and he cannot. "The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief . . . [t]hus it cannot be said that the judgment of the [state] court[] is contrary to *Berger*, or to any other Supreme Court decision." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002). Therefore, Petitioner is not entitled to habeas relief on this claim.

## IV.     Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

**<u>Conclusion</u>**

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.


Dated:    October 31, 2023                            /s/ *Maarten Vermaat*
                                                       Maarten Vermaat
                                                       United States Magistrate Judge